**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MATTHEW SCIABACUCCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| STATE NATIONAL COMPANIES, INC., TERRY LEDBETTER, GENE BECKER, MARSHA CAMERON, DAVID KING, FRED REICHELT, MARKEL CORPORATION, and MARKELVERICK CORPORATION, | ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## <u>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934</u>

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## <u>NATURE OF THE ACTION</u>

1.    This action stems from a proposed transaction announced on July 26, 2017 (the "Proposed Transaction"), pursuant to which State National Companies, Inc. ("State National" or the "Company") will be acquired Markel Corporation ("Parent") and Markelverick Corporation ("Merger Sub," and together with Parent, "Markel").

2.    On July 26, 2017, State National's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Markel.  Pursuant to the terms of the Merger Agreement, if State National's stockholders approve the Proposed Transaction, they will receive $21.00 per share in cash.

3.      On August 29, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of State National common stock.

9.      Defendant State National is a Delaware corporation and maintains its principal executive offices at 1900 L. Don Dodson Dr., Bedford, Texas 76021.  State National's common stock is traded on the NasdaqGS under the ticker symbol "SNC."

10.     Defendant Terry Ledbetter ("Ledbetter") is a director, co-founder, Chairman of the Board, and Chief Executive Officer ("CEO") of State National. Terry Ledbetter may be served at 9423 Alva Court, Dallas, TX 75220, or wherever he may be found.

11.     Defendant Gene Becker ("Becker") is a director of State National. Gene Becker may be served at 15158 Brolio Lane, Naples, FL 34110, or wherever he may be found.

12.     Defendant Marsha Cameron ("Cameron") is a director of State National. Marsha Cameron may be served at 4414 Ridge Road, Dallas, TX 75229, or wherever she may be found.

13.     Defendant David King ("King") is a director of State National. David King may be served at 455 Bunn Road, Bedminster, NJ 07921, or wherever he may be found.

14.     Defendant Fred Reichelt ("Reichelt") is a director of State National. Fred Reichelt may be served at 3440 Deer Ridge Road, Danville, CA 94506, or wherever he may be found.

15.     The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

16.     Defendant Parent is a Virginia corporation, and a party to the Merger Agreement.

17.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of State National (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19.     This action is properly maintainable as a class action.

20.     The Class is so numerous that joinder of all members is impracticable.  As of July

19, 2017, there were approximately 42,173,561 shares of State National common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

25.     State National is a leading specialty provider of property and casualty insurance services operating in two niche markets across the United States.  In its lender services segment, the Company specializes in providing collateral protection insurance, which insures personal automobiles and other vehicles held as collateral for loans made by credit unions, banks, and specialty finance companies.  In its program services segment, the Company leverages its "A" (Excellent) A.M. Best rating, expansive licenses, and reputation to provide access to the U.S. property and casualty insurance market in exchange for ceding fees.

26.     Individual Defendant Ledbetter and his family founded a small general agency in 1973 selling collateral protection insurance ("CPI") exclusively in Texas.  By the late 1970s, the Company began to expand the CPI business beyond Texas.  Also at that time, the Company began to receive inquiries from other carriers and general agents seeking to access the Texas non-standard automobile market, and recognized the opportunity to act as an issuing carrier. Most of this business, which ultimately formed the foundation of State National's Program Services business model, was non-standard automobile insurance in the state of Texas written by a county mutual insurance company that we managed, and all of this business was 100% reinsured.

27.     In 1984, the Company formed State National Insurance Company, Inc. ("SNIC") to write its CPI business directly.  SNIC received an "A" (Excellent) rating from A.M. Best in 1993, and has maintained the rating for over 20 years.  Over the years, State National expanded its fronting and CPI operations outside of Texas and acquired additional insurance subsidiaries.

28.     In 2009, the Company formed an exclusive relationship with CUNA Mutual

Insurance Society ("CUNA Mutual"), a leading provider of insurance products to credit unions. This alliance has enabled the Company to achieve a leading market share in the credit union CPI market.

29.     On June 25, 2014, State National completed the sale of an aggregate of 31,050,000 shares of its common stock in a private placement exempt from registration under the Securities Act of 1933.  Subsequently, the Company registered the resale of these shares with the SEC and its common stock began trading on the Nasdaq Global Select Market on November 3, 2014.

30.     Notwithstanding the Company's success and prospects for future growth as a standalone company, the Board caused the Company to enter into the Merger Agreement on July 26, 2017, pursuant to which the Company will be acquired by Markel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

32.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

33.     *First*, the Proxy Statement omits material information regarding State National's financial projections and the financial analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore").

34.     Although the Proxy Statement discloses certain financial projections of the Company for years 2017 through 2021, the Proxy Statement fails to disclose the Company's projected book value and tangible book value, or their respective line items, for years 2017 through 2021.   The disclosure of these projections are important, as Evercore used

"management's estimate of the book value of the Company" through 2021 to calculate the Company's projected terminal value in its Dividend Discount Model Analysis, and applied ranges of tangible book value multiples selected based on Evercore's review of purportedly comparable companies to the Company's tangible book value for the first quarter of 2017 in several of Evercore's analyses.

35.    With respect to Evercore's Dividend Discount Model Analysis, the Proxy Statement fails to disclose: (i) the Company's projected book value, or its line items, for years 2017 through 2020; (ii) the inputs and assumptions underlying the discount rate range of 11.0% to 13.0%; and (iii) the perpetuity growth rates that are implied by Evercore's analysis.

36.    With respect to each of Evercore's Selected Public Company Trading Analysis, As-Traded Sum-of-the-Parts Analysis, and Public Company Regression Analysis, Evercore reviewed various multiples of companies that were purportedly comparable to State National to derive implied per share valuation ranges of the Company.  The Proxy Statement, however, fails to disclose each of the individual multiples and financial metrics for the companies observed by Evercore in its analyses.  These multiples must be disclosed as they are the key inputs in each of the analyses.

37.    Similarly, with respect to each of Evercore's Selected Precedent Transaction Analysis and M&A Sum-of-the-Parts Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Evercore in the analyses.

38.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.   Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Opinion of the Company's Financial Advisor;" and (ii) "Certain Company Prospective Financial Information."

40.     *Second*, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers.

41.     The Proxy Statement state that, ""[u]nder the terms of the merger agreement, Parent has agreed to maintain until December 31, 2018, certain levels of compensation and benefits for the employees of the Company, including the executive officers, whose employment is not terminated."  Although the Proxy Statement suggests that at least some executive officers will continue to be employed following the close of the Proposed Transaction, the Proxy Statement fails to disclose any information relating to the timing and nature of all communications regarding the retention of State National's officers, including who participated in all such communications.

42.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Certain Persons in the Merger."

44.     *Third*, the Proxy Statement omits material information relating to the background leading to the Proposed Transaction.

45.     The Proxy Statement fails to disclose the reason the Board determined to seek a sale of the Company, including whether it was at the insistence of Individual Defendant Ledbetter.  In this regard, the Proxy Statement states that:

> In November 2016, an executive session of the Company board of directors authorized the Company's senior management, in consultation with the Company board of directors, to consider potential strategic alternatives for the Company, including a sale of the Company. During these discussions, it was acknowledged that the Ledbetter family had indicated a preference that any transaction result in their exit from the Company on the same basis as other stockholders.

46.     Stockholders are entitled to know whether Ledbetter pushed for a sale of the Company as a result of his desire to exit the Company, as that desire can give rise to a conflict of interest.  This information is important to stockholders to understand whether the sale of the Company was pursued to satisfy the interests of Ledbetter and his family, rather than the interests of the Company's public stockholders.

47.     Further, the Proxy Statement indicates that, during the sale process, the Company entered into several confidentiality agreements that contained standstill provisions, which generally prevent those parties from submitting offers to acquire the Company.  The Proxy Statement, however, fails to disclose whether those standstill provisions also contain "don't ask, don't waive" provisions that prevent those counterparties from even requesting a waiver of their respective standstill provisions.

48.     This information is important in light of the fact that the Proxy Statement implies

that, under the terms of the Merger Agreement, the Board can waive the standstill provisions "if failure to do so would be inconsistent with the directors' fiduciary duties." If the standstill provisions contain "don't ask, don't waive" provisions, however, the Board will be unaware of whether failing to waive the standstill provisions is inconsistent with its fiduciary duties since the counterparties cannot even approach the Board to request a waiver of their standstill provision. As such, stockholders are entitled to the full disclosure of this information.

49.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Certain Persons in the Merger."

50.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to State National's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and State National**

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. State National is liable as the issuer of these statements.

53.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

54.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

56.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

57.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

58.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Markel

59.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60.     The Individual Defendants and Markel acted as controlling persons of State National within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of State National and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

61.     Each of the Individual Defendants and Markel was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

63.     Markel also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

64.     By virtue of the foregoing, the Individual Defendants and Markel violated Section 20(a) of the 1934 Act.

65.     As set forth above, the Individual Defendants and Markel had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  September 11, 2017

**KENDALL LAW GROUP, PLLC**

By:   */s/ Joe Kendall*
      Joe Kendall
      Texas Bar No. 11260700
      jkendall@kendalllawgroup.com
      Jamie J. McKey
      Texas Bar No. 24045262
      jmckey@kendalllawgroup.com
      3232 McKinney Avenue, Suite 700
      Dallas, TX 75204
      Telephone:  (214) 744-3000
      Facsimile:  (214) 744-3015

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone:  (302) 295-5310
Facsimile:  (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone:  (484) 324-6800
Facsimile:  (484) 631-1305

*Attorneys for Plaintiff*